IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

ELIZABETH REED,                    )
                                   )
     Plaintiff,                    )
                                   )
v.                                 )        No. 09-2607
                                   )
INLAND INTERMODAL LOGISTICS        )
SERVICES, LLC,                     )
                                   )
     Defendant.                    )

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is the December 16, 2010 Motion for
Summary Judgment filed by Defendant Inland Intermodal Logistics
Services, LLC ("Inland") on Plaintiff Elizabeth Reed's ("Reed")
claims arising from her employment at Inland (See Def.'s Mot.
for Summ. J., ECF No. 36 ("Def's Mot."); Def.'s Brief in Supp.
of Mot. for Summ J., ECF No. 36-1 ("Def.'s Mem.").)  On February
15, 2011, Reed responded in opposition to Inland's motion.
(Pl.'s Mem. In Resp. to Mot. for Summ. J. 5, ECF No. 50-1
("Resp.").)  Inland replied on March 2, 2011.  (Def.'s Reply in
Supp. of Mot. for Summ. J., ECF No. 53.)

Reed commenced this action by filing a complaint for gender
discrimination and wrongful termination in the Chancery Court of
Shelby County, Tennessee, on August 18, 2009, and Inland removed

1

to this Court on September 16, 2009.   Reed alleges that Inland violated the Tennessee Maternity Leave Act ("TMLA"), Tenn Code Ann. § 4-21-408; that her termination was retaliatory under the TMLA; and that she was discriminated against based on race and gender in violation of the Tennessee Human Rights Act ("THRA"). Tenn. Code Ann. §§ 4-21-101, et. seq.   Reed also brings claims for a hostile work environment, intentional infliction of emotional distress, and negligent infliction of emotional distress.   For the following reasons, Inland's motion for summary judgment is GRANTED.

## I.    BACKGROUND

The following facts are undisputed unless otherwise stated.[1] Reed is an African-American female who was an employee of Inland from April 10, 2006, to October 22, 2008.   (Compl. ¶ 3.)   As a Maintenance   and   Repair   ("M&R")   Specialist,   Reed   handled

---

[1] Inland moved for summary judgment and Reed responded while the previous edition of the local rules governed actions in this district.   Under that version, Local Rule 7.2(d)(3) provided that a party opposing a motion for summary judgment who disputed any of the material facts on which the proponent relied was to "respond to the proponent's numbered designations, using the corresponding serial numbering, both in the response and by attaching to the response the precise portions of the record relied upon to evidence the opponent's contention that the proponent's designated material facts are at issue."   W.D. Tenn. Civ. R. 7.2(d)(3).   In many of her responses, Reed has not complied with these requirements and fails to provide any evidence from the record.   (See Pl.'s Resp. to Statement of Facts in Supp. of Mot. for Summ. J. 1, ECF No. 69.)   Unless otherwise stated, Reed's responses have been disregarded where she has failed to comply with the local rules.   See Akines v. Shelby Cnty. Gov't, 512 F. Supp. 2d 1138, 1147-48 (W.D. Tenn. 2007); see also George v. Vought Aircraft Indus., Inc., No. 3:08-0787, 2009 WL 5217002, at *4 n.2 (M.D. Tenn. Dec. 30, 2009) (applying similar local rule); Geesling v. Clay Cnty., No. 2:06-0056, 2007 WL 2509671, at *1 n.1 (M.D. Tenn. Aug. 30, 2007) (applying similar local rule).   The outcome would be the same under the current version of the local rules.   See W.D. Tenn. Civ. R. 56.1(b).

maintenance and repair issues for drivers on the road making deliveries, answered incoming calls from drivers with equipment issues, and maintained the M&R database.[2]   (Def.'s Statement of Material Fact Not in Dispute Upon Which it Relies in Supp. of Def.'s Mot. for Summ. J. ¶¶ 3-4, ECF No. 51-3 ("Inland's Statement of Facts"); Pl.'s Resp. to Statement of Facts in Supp. of Mot. for Summ. J. ¶¶ 3-4, ECF No. 69 ("Reed's Statement of Facts").)   During the course of her employment, Reed became pregnant and began missing work, including 26 hours of work in April 2008.  (Inland's Statement of Facts ¶ 7.)

As Reed's pregnancy progressed, she prepared for medical leave and approached her obstetrician, Dr. Riseling, for a Certification of Health Care Provider (the "Certification").[3] Dr. Riseling completed and signed the Certification, which stated that Reed would need time off for pregnancy-related issues, but would able to return to work eight weeks after delivery.  (Id. ¶ 8-9.)   The Certification also stated that Reed

---

[2] Intermodal transportation involves the use of a single container across multiple modes of transportation, such as container ships, trains, and trucks.  See Welcome to Inland Intermodal Logistics Services, LLC, Inland Intermodal Logistics Services, LLC, http://iils.com/About-Inland-Intermodal-Logistics-Services/About-Us.asp (last visited Sep. 6, 2011).

[3] Although the Certification of Health Care Provider has not been introduced into evidence by either party, the form is available on the U.S. Department of Labor website.  See Dep't of Labor, Certification of Healthcare Provider, http://www.dol.gov/whd/regs/compliance/fairpay/wh380.pdf.  Under the FMLA, an employer can require that an employee provide a Certification to prove the employee has a valid medical reason for his or her leave, and the FMLA requires that the health care provider who fills out the Certification state the nature of the medical emergency in depth.  Certification, General Rule, 29 C.F.R. § 825.306-.308.

would need intermittent leave during her pregnancy, which she requested.[4]

While Reed was pregnant, she was moved to the special projects position, which had the same compensation and benefits as her former M&R specialist position.[5]   (Id. ¶ 12.)   Between May 2008 and her last day at Inland, on July 25, 2008, Reed was absent for the equivalent of four weeks.[6]   (Id. ¶ 13.)   Inland moved its offices during this time, and Reed's manager packed her items for her.[7]   (Id. ¶ 20.)

---

[4] Reed denies that she requested intermittent leave.  However, in her deposition, she admitted that the Certification provided that it would be necessary for her to work intermittently during her pregnancy and that she took days off pursuant to her Certification in May 2008.  (Dep. of Elizabeth Read 57:8-20, ECF No. 36-4, Oct. 5, 2010 ("Reed Dep").)  Reed relies on her affidavit, but it was sworn on July 5, 2011, months after her deposition, which contradicts the statements in the affidavit.  (Reed Aff. 2.)  "A party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been filed, which contradicts her earlier deposition testimony."  Barrett v. Whirlpool Corp., 704 F.Supp.2d 746, 753 (M.D. Tenn. 2010).  Reed's statement that she did not request intermittent leave contradicts her deposition testimony that the Certification provided for intermittent leave and that she took leave pursuant to the Certification.  "[A] party cannot create a genuine issue of material fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction."  Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999).  Because Reed does not explain the contradiction, the facts of paragraphs ten and eleven of Inland's Statement of Facts are deemed admitted, although they do not affect this Court's decision.

[5] Reed does not dispute that the benefits and compensation were the same for both positions.

[6] Reed argues, based on her affidavit, that Inland told her these days would not count toward her medical leave.  (Reed Aff. ¶ 8.)  Reed does not dispute, however, that she missed the equivalent of four weeks of work.

[7] The parties dispute other facts about the move, such as whether or not a moving company was hired and who told Reed to unplug her computer.  (Inland's Statement of Facts ¶¶ 15-20; Reed's Statement of Facts ¶¶ 15-21.)  Because these facts are not relevant to the case, the Court will not address them and accepts Reed's version for the purpose of summary judgment.

4

After the move to the new office, Inland's hallways were painted. (Id. ¶ 21.) Reed expressed concern about the effects of paint fumes on her unborn child and asked to move her station away from the paint. (Id. ¶ 22-23.) She was given permission to leave for the day and was not disciplined for it. (Id. ¶ 24-25; Aff. of Elizabeth Reed ¶ 18, ECF No. 69-1 ("Reed Aff.").)

Reed continued to have difficulty with her job in the special projects position and with other assignments during this period. Reed was unable, for instance, to reach the lower filing cabinets because she could not bend over. (Inland's Statement of Facts ¶ 27.)[8]  Because of Reed's difficulties, Inland arranged for her to work as a receptionist, again with the same compensation and benefits. (Id. ¶ 29.) Her duties included answering phones, greeting visitors, and distributing mail. Because a portion of the mail had to be placed in baskets on the floor, she had difficulty. (Id. ¶¶ 30-32.) Reed also had difficulty going downstairs to check the mail. When she complained to Tera Jackson ("Jackson"), Inland's Human Resources

---

[8] Although Reed expressed uncertainty about her precise duties in the special projects position in her Response to Inland's Statement of Facts, she acknowledged in her affidavit that she was responsible for all filing. (Reed Aff. ¶ 20.)  Reed also conceded she had difficulty placing mail in baskets on the floor. (Reed Aff. ¶ 22.)  Paragraph 27 of Inland's Statement of Facts is therefore deemed admitted.

Manager, Jackson spoke to Reed's supervisor to remedy the problem.  (Id. ¶¶ 34-36.)[9]

Reed went on full-time maternity leave on July 25, 2008. (Id. ¶ 39.)  She did not contact anyone at Inland until she received a letter from Jackson on September 24, which informed Reed that her leave would expire on October 7, 2008.  (Id. ¶ 40.)  Reed's doctor cleared her to return to work on October 7, 2008, but Reed requested that she be allowed to remain on leave until December.  (Id. ¶ 41.)[10]  Jackson sent Reed a second notice on October 7, 2008, explaining that she had to return to work by October 22, 2008.  (Id. ¶ 44.)

Although the parties dispute how Reed's employment at Inland ended, they agree that, on October 22, 2008, Reed requested separation notice paperwork.  (Id. ¶ 45.)  When Reed received her separation notice, she did not call anyone at Inland to ask why the notice said she had quit.  She has never been treated for emotional distress.  (Id. ¶¶ 48-49.)  She never reported any incidents of discrimination or harassment to human

---

[9] Reed claims that she had to deliver the mail until she left on maternity leave.  (Reed Aff. ¶ 23.)  This allegation directly contradicts her deposition, where she admits she spoke to Jackson and afterwards did not handle the mail.  (Reed. Dep. 88:12-20.)

[10] Reed stated in her deposition that she was medically cleared to return to work on October 7, 2008. (Reed Dep. 207: 6-7.)  Reed's Affidavit contradicts this claim and says that the eight weeks of leave her doctor cleared were only "standard". Reed offers no evidence to explain this discrepancy.  (Reed Aff. ¶ 26.)  She also provides no date other than October 7, 2008, for which she was medically cleared to return to work.  Reed's deposition statement is controlling despite the other, later statement in her affidavit.  Cleveland, 526 U.S. at 806.

6

resources or to her manager, although she was aware that Inland had a harassment avoidance policy. (Id. ¶¶ 55-56.)

This case was initially removed because Reed alleged violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601. The FMLA claims were dismissed on April 27, 2010. (Order Granting in Part and Denying in Part Def.'s Mot. to Dismiss and Granting Pl.'s Mot. to Am., ECF No. 26 ("Order Granting in Part Def.'s Mot. to Dismiss").) The remaining claims are now before the Court.

## II. JURISDICTION AND CHOICE OF LAW

Reed's initial complaint alleged breaches of federal law, and this Court had original jurisdiction over her federal claims under 28 U.S.C. § 1331 and supplemental jurisdiction over her related state law claims under 28 U.S.C. § 1367. Although Reed's federal claims have been dismissed (See Order Granting in Part Def.'s Mot. to Dismiss), the Court retains discretion to adjudicate the supplemental claims. 28 U.S.C. § 1367(c)(3). The Court is familiar with this matter, having handled it since September 2009. Dismissal or removal would merely delay the outcome for an unknown period of time. The interest in "judicial economy and the avoidance of multiplicity of litigation" counsel exercise of the Court's supplemental jurisdiction. Landefeld v. Marion Gen. Hosp., Inc., 994 F.2d 1178, 1182 (6th Cir. 1993).

When a federal court exercises supplemental jurisdiction, it is bound to apply the choice of law rules of the forum state. Menuskin v. Williams, 145 F.3d 755, 761 (6th Cir. 1998) (citations omitted); accord Girgis v. Countrywide Home Loans, Inc., 733 F. Supp. 2d 835, 850-51 (N.D. Ohio 2010) (citations omitted).

For tort claims, Tennessee follows the "most significant relationship" rule, which provides that "the law of the state where the injury occurred will be applied unless some other state has a more significant relationship to the litigation." Hataway v. McKinley, 830 S.W.2d 53, 59 (Tenn. 1992). To determine which state has the "most significant relationship," Tennessee courts consider seven principles:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability, and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Timoshchuk v. Long of Chattanooga Mercedes-Benz, No. E2008-01562-COA-R3-CV, 2009 WL 3230961, at *10 (Tenn. Ct. App. Oct. 8, 2009) (quoting Restatement (Second) of Conflict of Laws § 6 (1971)). When applying these principles, courts must consider four factors: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, [and] (d) the place where the relationship, if any, between the parties is centered." Id. at *11 (quoting Restatement (Second) of Conflict of Laws § 145 (1971)). "[T]hese contacts are to be evaluated according to their relative importance with respect to the particular issue." Id. (quoting Restatement (Second) of Conflict of Laws § 145 (1971)).

The parties assume that Tennessee law governs Reed's claims. (See, e.g., Def.'s Mem. 18; Reply 4-5.) The alleged injury occurred in Tennessee. Reed worked for Inland in Tennessee and says she suffered harm from Inland's conduct in Tennessee. Both Reed and Inland are residents of Tennessee. The relevant employment relationship between Reed and Inland was centered in Tennessee. No state has a more significant relationship to the litigation than Tennessee. No relevant principle weighs against applying Tennessee substantive law.

See Timoshchuk, 2009 WL 3230961, at *10.   Therefore, the Court will apply Tennessee substantive law to Reed's claims.

### III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, on motion of a party, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   The party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine [dispute] of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986); see Fed. R. Civ. P. 56(a).   The moving party can meet this burden by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of her case.   See Fed. R. Civ. P. 56(c)(2); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

When confronted with a properly supported motion for summary judgment, the respondent must set forth specific facts showing that there is a genuine dispute for trial.   See Fed. R. Civ. P. 56(c).   A genuine dispute for trial exists if the evidence is such that a reasonable jury could return a verdict

10

for the nonmoving party.  See Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 248 (1986).  The nonmoving party must "do more
than simply show that there is some metaphysical doubt as to the
material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio
Corp., 475 U.S. 574, 586 (1986).  One may not oppose a properly
supported summary judgment motion by mere reliance on the
pleadings.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324
(1986).  Instead, the nonmovant must present "concrete evidence
supporting [her] claims."  Cloverdale Equip. Co. v. Simon
Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989) (citations
omitted); see Fed. R. Civ. P. 56(c)(1).  The district court does
not have the duty to search the record for such evidence.  See
Fed. R. Civ. P. 56(c)(3); InterRoyal Corp. v. Sponseller, 889
F.2d 108, 111 (6th Cir. 1989).  The nonmovant has the duty to
point out specific evidence in the record that would be
sufficient to justify a jury decision in her favor.  See Fed. R.
Civ. P. 56(c)(1); InterRoyal Corp., 889 F.2d at 111.  "Summary
judgment is an integral part of the Federal Rules as a whole,
which are designed to secure the just, speedy, and inexpensive
determination of every action[,] rather than a disfavored
procedural shortcut."  FDIC v. Jeff Miller Stables, 573 F.3d
289, 294 (6th Cir. 2009) (internal quotation marks and citations
omitted).

**IV.  ANALYSIS**

Reed claims that Inland violated the TMLA, the THRA, created a hostile work environment, and was responsible for negligent and intentional infliction of emotional distress. None of Reed's claims is well taken.

### A. TENESSEE MEDICAL LEAVE ACT

The TMLA requires that employers with at least one hundred full-time employees permit female employees to take up to sixteen weeks of maternity leave. Tenn. Code Ann. § 4-21-408(a), (d)(3). This exceeds the FMLA, which requires no more than twelve weeks of leave. 20 U.S.C. § 2612(a)(1). The THRA also states that maternity leave shall not affect an employee's right to receive any other employment benefits. Tenn. Code Ann. § 4-21-408(c)(1).

Inland states that it employs fewer than fifty people and is not covered by the TMLA. (Aff. of Tera Jackson ¶ 4, ECF No. 36-6 ("Jackson Aff."); Ex. B, Tenn. Dep't of Labor and Workforce Development, ECF No. 36-3.) As proof, Inland has submitted an affidavit from its Human Resources Manager, Jackson, and a copy of its Quarterly Labor and Workforce Development Department Report. (Id.) Reed responds that she "is not certain of an exact number of employees that Inland employed," but provides no evidence to controvert Jackson's affidavit and exhibit. (Reed Aff. ¶ 4.) "In order to defeat [a] motion for summary judgment, the non-moving party must present probative evidence that

supports its complaint." Walker v. Moldex Metric, Inc., No. 2:10-CV-164, 2011 WL 3044529, at *2 (E.D. Tenn. July 25, 2011). Because the only evidence in the record demonstrates that the TMLA does not apply to Inland, summary judgment is GRANTED on Reed's TMLA claim.

### B. TENNESSEE HUMAN RIGHTS ACT

The THRA makes it unlawful for an employer to "to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment because of such individual's race, creed, color, religion, sex, age, or national origin." Tenn. Code Ann. § 4-21-401(a)(1).

The purpose and intent of the THRA is to "[p]rovide for execution within Tennessee of the policies embodied in the federal Civil Rights Act," Tenn. Code. Ann. § 4-21-101(a)(1), and claims brought under the THRA have traditionally been subject to the same analytical framework as Title VII claims. See, e.g., Campbell v. Florida Steel Corp., 919 S.W.2d 26, 31 (Tenn. 1996). This framework was first articulated in McDonnell Douglas Corp v. Green. 411 U.S. 792, 802-05 (1973).

However, in Gossett v. Tractor Supply Co, Inc., the Tennessee Supreme Court held that "the McDonnell Douglas framework is inapplicable at the summary judgment stage because it is incompatible with Tennessee summary judgment jurisprudence." 320 S.W.3d 777, 785 (Tenn. 2010). The

Tennessee Supreme Court decided that a court "must take all reasonable inferences in favor of [the plaintiff], and discard all countervailing evidence." Id. at 784 (quoting Blair v. W. Town Mall, 130 S.W.3d 761, 768 (Tenn. 2004)). Despite Gossett, both parties assume that McDonnell Douglas applies. They are correct because Gossett stated a procedural rule inapplicable in federal courts and because Gossett is no longer good law in Tennessee.

Gossett established a Tennessee rule of procedure. This Court must follow federal procedure. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 92 (1939). In deciding whether a law is substantive or procedural, the court must consider whether the law is outcome-determinative. Guaranty Trust Co. v. York, 326 U.S. 99, 107 (1945). The court's decision must be "guided by the twin aims of the Erie rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." Gasperini v. Center for Humanities, Inc., 518 U.S. 415, 518 (1996) (quoting Hanna v. Plumer, 380 U.S. 460, 468 (1965)).

Because the Supreme Court has decided that "the McDonnell Douglas presumption is a procedural device," St. Mary's Honor Center v. Hicks, 509 U.S. 502, 521 (1993), federal courts in Tennessee have held that Gossett decided a procedural matter, and not a matter of substantive law. See, e.g., Moling v. O'Reilly Auto, Inc., 763 F. Supp. 2d 956, 970-79 (W.D. Tenn.

14

2011); <u>Brindley v. Philips Elec. N. Am Corp.</u>, No. 3:11-0352, 2011 U.S. Dist. LEXIS 78519, at *17 n.6 (M.D. Tenn. July 19, 2011); <u>Robinson v. CareFocus, Inc.</u>, No. 1:10-CV-208, 2011 U.S. Dist. LEXIS 73975, at *24 n. 4 (E.D. Tenn. July 8, 2011); <u>Campbell v. Eagle Bend Mfg.</u>, No. 3:10-cv-24, 2011 U.S. Dist. LEXIS 67422, at *6 n.2 (E.D. Tenn. June 22, 2011); <u>Shelton v. Techpack Am., Inc.</u>, No. 2:10-cv-89, 2011 U.S. Dist. LEXIS 49460, at *14 n.3 (E.D. Tenn. May 6, 2011).

The Tennessee Supreme Court itself upheld the use of <u>McDonnell Douglas</u> at trial, finding that it was "particularly appropriate" there. <u>Gossett</u>, 320 S.W.3d at 783. Thus, the "only significant difference between the state and federal regimes is when a case that fails one of the <u>McDonnell Douglas</u> components will be dismissed." <u>Snead v. Metro. Property and Casualty Insur. Co.</u>, 237 F.3d 1080, 1091 (9th Cir. 2001).

Addressing summary judgment, the Sixth Circuit has held that the mere fact that

> [the Federal Rules of Procedure] and [state law] set
> forth different standards for plaintiffs at this stage
> of litigation . . . is no barrier to the application
> of the federal standard . . . .  If [a plaintiff]
> cannot produce the minimal evidence required to
> survive summary judgment, there is no reason to think
> she would have prevailed at trial.  Therefore, we are
> not overly concerned that our decision today will lead
> to different outcomes in federal as opposed to state
> court.

Shropshire v. Laidlaw Transit, Inc., 550 F.3d 570, 576 (6th Cir. 2001).   The Tennessee Supreme Court recognized that the McDonnell Douglas framework would apply at trial.   Shropshire strongly suggests that applying it at the summary judgment stage in federal court would not produce different results.   Id.

Even if Gossett had decided an issue of substantive law the Tennessee General Assembly explicitly overruled it in a public act that became effective on June 10, 2011.   Tenn. Code Ann. 4-21-311.   The General Assembly explicitly affirmed that "[t]he McDonnell Douglas framework . . . is an appropriate framework for the consideration of evidence offered in employment discrimination and retaliation cases . . . [on] motions for summary judgment."   H.B. 1641 § 1(a)(3), 2011 Gen. Assem., 107th Leg. (Tenn. 2011).   The purpose of the act was to "establish the McDonnell Douglas framework as the appropriate and legally required framework for the consideration of evidence at all stages" of employment discrimination cases, (id. § 1(b)(1)) (emphasis added), and to "expressly reject and legislatively overrule the decision of the three-justice majority in Gossett." (Id. § 1(b)(2)).   The act provides that:

> [T]he plaintiff shall have the burden of establishing a prima facie case of intentional discrimination or retaliation.  If the plaintiff satisfies this burden, the burden shall then be on the defendant to produce evidence that one (1) or more legitimate, nondiscriminatory reasons existed for the challenged employment action . . . .  If the defendant produces

such evidence, the presumption of discrimination or
retaliation raised by the plaintiff's prima facie case
is rebutted, and the burden shifts to the plaintiff to
demonstrate that the reason given by the defendant . .
. was a pretext for illegal discrimination . . . .
The foregoing allocations of burdens of proof shall
apply at all stages of the proceedings, including
motions for summary judgment.

Tenn. Code. Ann. § 4-21-311(e).   The act "[took] effect upon

becoming a law."   An Act to Amend Tennessee Code Annotated,

Title 4 and Title 50, Relative to Claims for Employment

Discrimination and Discharge, ch. 461 (Tenn. 2011).   Gossett

does not apply to the THRA claims at issue here, and the Court

will analyze those claims using the framework traditionally

applied to THRA claims.   See Harris v. Nashville & Davidson

Cnty., 594 F.3d 476, 484-85 (6th Cir 2010); Newsom v. Textron

Aerostructures, 924 S.W.2d 87, 96 (Tenn. Ct. App. 1995).

Because Reed provides no direct evidence of discrimination,

her case is governed by the burden shifting framework developed

in McDonnell Douglas.   411 U.S. at 802-05.   To demonstrate a

prima facie case of discrimination based on race or gender, a

plaintiff must show that:

(1) he or she was a member of a protected class; (2)
he or she suffered an adverse employment action; (3)
he or she was qualified for the position; and (4) he
or she was replaced by someone outside the protected
class or was treated differently than similarly-
situated, non-protected employees.

Wright v. Murray Guard, Inc., 455 F.3d 702, 707 (6th Cir. 2006)

(quoting DiCarlo v. Potter, 358 F.3d 408, 415 (4th Cir. 2004))

(applying McDonnell Douglas framework to racial and gender discrimination claims); see also Alexander v. Ohio State Univ. Coll. of Social Work, No. 10-3358, 2011 WL 2535277, at *4 (6th Cir. June 28, 2011); Thompson v. UHHS Richmond Heights Hosp., Inc., 372 F. App'x 620, 623 (6th Cir. 2010). "If the plaintiff successfully establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action." Reed, 286 F. App'x at 255 (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254-56 (1981)); see also Hunter v. Sec'y of U.S. Army, 565 F.3d 986, 996 (6th Cir. 2009). "The plaintiff may then seek to rebut the evidence by demonstrating that the articulated reason was a mere pretext for discrimination." Reed, 286 F. App'x at 255 (citing Burdine, 450 U.S. at 254-56); see also Hunter, 565 F.3d at 996.

Reed is a member of two protected classes. She has satisfied the second element of her prima facie case of racial and gender discrimination because she has provided sufficient evidence for a jury to decide that she suffered an adverse employment action. However, Reed has failed to prove she was treated differently than similarly-situated, non-protected employees, and she has failed to rebut Inland's evidence that it had a valid, nondiscriminatory reason to fire her.

**1. Adverse Employment Action**

To prevail on a THRA claim, a plaintiff must show that he or she was the victim of an adverse employment action.  Mullins v. U.S. Bank, 296. F. App'x 521, 520 (6th Cir. 2008).  The plaintiff must show that there was an injury that would lead to a "reasonable jury . . . return[ing] return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.  If an employee is terminated, she has suffered an adverse employment action.  If a party resigns, however, she has not suffered an adverse employment action and cannot establish her prima facie case.  Nance v. Goodyear Tire & Rubber Co., 527 F.3d 539, 554 (6th Cir. 2008); see also Hammon v. DHL Airways, Inc., 165 F.3d 441, 447 (6th Cir. 1999).  "Therefore, this Court must determine whether [the] plaintiff voluntarily resigned before we may address the plaintiff's [discrimination claims]."  Id.

Reed alleges that she was terminated and provides two documents to prove it: her Separation Notice and a copy of her Tennessee Department of Labor & Workforce Development ("TDOL") decision.  Neither of these, however, would permit a reasonable jury to return a verdict for Reed.

Reed's Separation Notice states that she resigned.  It speaks of a "voluntary resignation."  (Ex. Separation Notice in Supp. of Pl.'s Mem. In Resp. to Mot. For Summ. J., ECF No. 50-3.)  Reed admits that she did not call to ask why her Separation Notice said she had voluntarily resigned, or why the box marked

"quit" had been checked. (Reed Dep. 201:309.)  She did not speak to anyone at Inland.  (Id. at 163:10-22.)  A reasonable jury could not rely on a Separation Notice that states Reed voluntarily resigned and that she admits she did not contest.

Nor can Reed rely on the TDOL decision. The Sixth Circuit has held that TDOL reports are inadmissible in discrimination litigation because they are the products of "quick and inexpensive hearings" with different standards of proof than civil trials.  See Pascual v. Anchor Advances Prod., Inc., No. 96-5453, 1997 U.S. App. LEXIS 17732, at *14 (6th Cir. July 10, 1997) (holding that unemployment hearings are not relevant to discrimination suits); see also Tenn. Code Ann. § 50-7-304(k) ("no finding of fact or law made with respect to a claim for unemployment compensation . . . may be conclusive . . . regardless of whether the prior action was between the same or related parties or involved the same facts"); Wright v. Columbia Sussex Corp., No. 3:06-CV-190, 2008 U.S. Dist. Lexis 28096, at *6 (E.D. Tenn. April 7, 2008) (denying admission of TDOL report because "the probative value (minimal, if any) is substantially outweighed by the danger of unfair prejudice").  "[A]n unemployment hearing officer's decision . . . should normally not be admitted [in an employment discrimination suit]." Pascual, 1997 U.S. App. LEXIS 17732, at *14 (quoting Bradshaw v.

Golden Rd. Motor Inc., 885 F. Supp. 1370, 1375 (D. Nev. 1995)).
Reed's TDOL decision is inadmissible.

    To survive a motion for summary judgment, the non-moving
party need only show that "a reasonable juror could return a
verdict for the nonmoving party."   Pucci v. Nineteenth Dist.
Court, 628 F.3d 752, 759 (6th Cir. 2010).   Reed's affidavit
states that she "never indicated to any employee of the
Defendant that [she] was resigning." (Reed. Aff. ¶ 28.)   Reed
also testified that she was told by Inland she would be fired if
she did not return to work by a certain date. (Reed Dep. 75:22–
76:3.)   Given that all evidence and reasonable inferences "must
be viewed in the light most favorable to the party opposing the
motion," a reasonable jury could conclude that Reed suffered an
adverse employment action. Matsushita, 475 U.S. at 587.

    **2. Comparison to a Similarly Situated Employee**

    Reed has failed to show that she was treated differently
than a similarly situated employee who is not a member of her
protected class. Alexander, 2011 WL 2535277, at *4.   To prove
discriminatory treatment, "the employee with whom the plaintiff
seeks to compare himself must be similar in all of the relevant
aspects in order for the two to be similarly situated."
Hagedorn v. Veritas Software Corp., 129 F. App'x 1000, 1003 (6th
Cir. 2005) (quoting Johnson v. Kroger Co., 319 F.3d 858, 867
(6th Cir. 2003)).

Reed alleges that she was discriminated against on the basis of race and gender.  However, the only employee to whom Reed compares herself is Rebecca Foster ("Foster"), "a female manager who took time off for her pregnancy and childbirth." (Resp. 5.)  By comparing herself to another woman, Reed has failed to show that she was treated differently than "similarly situated, non-protected employees."  Gibson v. Shelly Co., 314 F. App'x 760, 771 (6th Cir. 2008).  Because Foster is a member of the same protected class for the purpose of the gender discrimination claim, Reed's claim must fail.  See Alexander, 2011 WL 2535277, at *4 (finding against plaintiff because he compared himself to a member of his protected class).

Reed has failed to introduce Foster's race into the record. Because nothing in the record demonstrates Foster's race, Reed has failed to establish that Foster was not a member of Reed's protected class and thus has not provided "concrete evidence supporting [her] claims" of racial discrimination.  Cloverdale Equip. Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989).

Even if the Court could presume that Foster is not a member of the same protected class for purposes of Reed's racial discrimination claim, Reed has failed to show that she and Foster were similarly situated.  The plaintiff has the burden of showing that the similarly situated parties "have dealt with the

same supervisor, have been subject to the same standards, and have engaged in the same conduct." Mitchell v. Toledo Hosp., 964 F.2d 577, 582 (6th Cir. 1992). "To establish that a non-protected employee is an appropriate comparator, 'the plaintiff [must] demonstrate that he or she is similarly-situated to the non-protected employee in all relevant respects.'" Dickens v. Interstate Brands Corp., 384 F. App'x 465, 468 (6th Cir. 2010) (quoting Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 353 (6th Cir. 1998)) (emphasis in the original). This means that "the plaintiff and the proposed comparator [must] have engaged in acts of 'comparable seriousness.'" Id. (quoting Clayton v. Meijer, Inc., 281 F.3d 605, 611 (6th Cir. 2002). To determine comparability, courts consider "certain factors, such as whether the individuals 'have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" Id. (quoting Ercegovich, 154 F.3d at 352).

Inland's argument that Foster was not a similarly situated employee because she had a different supervisor is not well taken. (Def.'s Mem. 11.) "Supervisor" is construed broadly, and the court considers whether parties are comparable in all relevant aspects. McMillan v. Castro, 405 F.3d 405, 414 (6th

Cir. 2005); see also Seay v. TVA, 339 F.3d 454, 479 (6th Cir. 2003) (finding an employee was similarly situated to an individual in a different department with a different supervisor). The Sixth Circuit "[has] never held that an equivalence of supervisors was required to establish liability." Gibson, 314 F. App'x at 771. The parties need only "be similar in all of the relevant aspects." Ercegovich, 154 F.3d at 352 (emphasis in original). Thus, Inland's focus on Reed's immediate supervisor is misplaced; the two parties are comparable because of Inland's policy on maternity leave. See Gibson, 314 F. App'x at 770 (focusing on company's overall policy for safety violations, and not an individual employee's supervisor).

Reed's primary argument is that "Ms. Foster was treated better, and she in fact still works at Inland." (Resp. 5.) Reed admits that she received at least twelve continuous weeks of maternity leave, from July 25, 2008 to October 25, 2008. (Reed's Statement of Facts ¶¶ 39, 45.) Someone engaging in similar conduct would thus be someone who received or wanted sixteen weeks of leave.

Reed has failed to show that she and Foster engaged in the same conduct. Inland has shown that Foster took off less than 12 weeks for her pregnancy and childbirth. (Jackson Aff. ¶¶ 38-39.) Reed provides no evidence to dispute Inland's evidence

24

that Foster took off less time. (Reed's Statement of Facts ¶ 53.)  Indeed, in her deposition Reed could not identify any individuals who sought or were granted the amount of leave to which she claims she was entitled. (Reed. Dep. 207:11-25.)  She has failed to show that a member of a non-protected class was treated differently, because she has failed to show that anyone engaged in comparable conduct.  Reed has failed to establish her prima facie case.

### 3. Legitimate, Non-discriminatory Purpose

Even if Reed had established a prima facie case of race discrimination or gender discrimination, Inland's motion would be well taken.  It has provided a legitimate, non-discriminatory explanation for its actions.  "If the plaintiff successfully establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action." Reed, 286 F. App'x at 255 (citing Burdine, 450 U.S. at 254-56); see also Hunter, 565 F.3d at 996. "The plaintiff may then seek to rebut the evidence by demonstrating that the articulated reason was a mere pretext for discrimination." Reed, 286 F. App'x at 255 (citing Burdine, 450 U.S. at 254-56); see also Hunter, 565 F.3d at 996. Reed has failed to rebut Inland's valid, non-discriminatory reason for terminating her and so Reed's case must fail on that ground.

Inland was entitled to demand that Reed return to work on October 22, and it informed her of that fact. (See Inland Statement of Facts ¶ 44.)  Reed received more than the twelve weeks of work mandated by the FMLA. 29 U.S.C. § 2612(a)(1). This Court has found that, as a matter of law, the TMLA does not apply to Reed.  When Reed did not return to work after her leave had expired, Inland had a legitimate, non-discriminatory reason to terminate her.

Reed has provided no evidence of pretext on the part of Inland.  To prove pretext, a plaintiff "must produce evidence that either the proffered reason: (1) has no basis in fact; (2) did not actually motivate the adverse employment action; or (3) was insufficient to warrant the adverse action." Ladd v. Grand Trunk W. R.R., Inc., 552 F.3d 495, 502 (6th Cir. 2009).  Reed does not dispute that she requested sixteen weeks of maternity leave instead of the twelve she was allotted, and she provides no evidence that racial or gender discrimination motivated the adverse employment action.  Indeed, Reed never argues that her termination was pretextual. (See Resp.)  The Sixth Circuit requires that a plaintiff prove pretext by either: "(1) a direct evidentiary showing that a discriminatory reason more likely motivated the employer or by (2) an indirect evidentiary showing that the employer's explanation is not credible." Brennan v. Tractor Supply Co., 237 F. App'x 9, 19 (6th Cir. 2007). By

failing to provide such evidence, Reed has failed to show that there was pretext.

The Court's conclusion would be the same if Reed were entitled to sixteen weeks of leave under the TMLA. The THRA is designed to protect against discrimination, not against honest, if mistaken, termination. "[A]s long as an employer has an honest belief in the proffered nondiscriminatory reason, the employee cannot establish that the reason was pretextual because it is ultimately shown to be incorrect." Majewski v. Automatic Data Processing, Inc., 274 F.3d 1106, 1117 (6th Cir. 2001); see also Michael v. Caterpillar Fin. Servs. Corp., 496 F.3d 584, 598-99 (6th Cir. 2007) ("The key inquiry in assessing whether an employer holds such an honest belief is whether the employer made a reasonably informed and considered decision.") (citations and internal quotation marks omitted). Reed has not come forward with any evidence that Inland's decision was "so riddled with error or was so flawed" that Inland could not have honestly concluded it was entitled to terminate her. Reed, 416 F. App'x at 490. Inland's motion for summary judgment on Reed's THRA claim is GRANTED.

### C. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

Reed also brings suit for negligent infliction of emotional distress. (Compl. ¶¶ 31-35.) Negligent infliction of emotional distress requires: 1) a duty on the part of the defendant, 2)

27

breach of that duty, 3) injury or loss to the plaintiff, 4) causation in fact, and 5) proximate cause. Camper v. Minor, 915 S.W.2d 437, 440 (Tenn. 1996). Although the Tennessee Supreme Court has rejected the "confusing [and] rigid" physical injury rule, it requires "'serious' or 'severe' emotional injury which is established by expert or medical proof." Bain v. Wells, 936 S.W.2d 618, 622 (Tenn. 1997). See also Camper, 915 S.W.2d at 447 (requiring "expert medical or scientific proof" for a prima facie case). There must be a "showing of severe emotional injury." Oates v. Chattanooga Pub. Co., 205 S.W.3d 418, 429 (Tenn. Ct. App. 2006).

Reed claims she suffered a "serious and severe" injury, but in her affidavit she states that she has "not received any medical treatment for emotional distress." (Compl. ¶ 34; Reed Aff. ¶ 32.) Reed fails to meet the prima facie requirements under Tennessee law for negligent infliction of emotional distress, and Inland is entitled to summary judgment as a matter of law.

Reed's complaint is also barred by Tennessee's one-year statute of limitations. Tenn. Code Ann. § 28-3-104. None of the events that Reed alleges induced emotional distress occurred after her last day of employment on July 25, 2008. (Inland's Statement of Facts ¶ 13.) That was more than a year before her claim was filed on August 19, 2009. See Jackson v. CVS Corp.,

No. M2009-02220-COA-R3-CV, 2010 WL 3385184, at *3 (Tenn. Ct. App. Aug. 26, 2010).  Inland's motion for summary judgment on Reed's claim for negligent infliction of emotional distress is GRANTED.

### D. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Reed alleges that Inland acted "with the specific intent to cause emotional distress or with a reckless disregard of the probability of causing that distress to plaintiff." (Compl. ¶ 38.)  To establish a claim for intentional infliction of emotional distress, the plaintiff must show: "1) the conduct complained of must be intentional or reckless; 2) the conduct must be so outrageous that it is not tolerated by civilized society; and 3) that the conduct complained of must result in serious mental injury." Bain, 936 S.W.2d at 622.  "[T]he case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'" Id. at 622-23.  "The actionable conduct should be set out in the complaint describing the substance and severity of the conduct that is alleged to be outrageous." Federated Rural Elec. Ins. Ex. V. Hill, No. M2005-02461-COA-R3-CV, 2007 WL 907717 (Tenn. Ct. App. March 26, 2007). "[M]ere insults, indignities, threats, annoyances, petty oppression or other trivialities" do not suffice. Bain, 936 S.W.2d at 622 (quoting Medlin v. Allied Inv. Co., 398 S.W.2d

29

270, 278 (Tenn. 1966).   Inland is entitled to summary judgment because Reed has not proffered evidence that would allow a reasonable jury to find in her favor.

Indicative of the high standard of intentional infliction of emotional distress is <u>Jones v. Tenn. Valley Auth</u>. 948 F.2d 258, 266 (6th Cir. 1991).   In <u>Jones</u>, an employee was intimidated, assigned to menial tasks, unfairly reprimanded, had his communications monitored, had his medical records investigated, and was barred from promotions, but the court did not find that conduct to be outrageous.  <u>Id.</u> at 266.  Similarly, mocking an employee because of her physical and mental disabilities was not sufficient to establish intentional infliction of emotional distress.  <u>Oates</u>, 205 S.W.3d at 420.

The circumstances in this case do not rise to the harassment the plaintiffs suffered in <u>Jones</u> or <u>Oates</u>.   As one example of emotional distress, Reed notes that she had to put letters into mail baskets on the floor.  (Reed Dep. 147:8-148:18.)  Reed also mentions a time when Kip Reed told her to undo the wiring in a computer in a menacing manner, and she emphasized that dealing with Kip Reed caused emotional discomfort.  (Reed Aff. ¶ 12; Reed Dep. 147:8-25.)  Reed admits, however, that when she spoke to Human Resources and other employees about Kip Reed, they promised to speak to him and address the problem.  (Reed Aff. ¶ 12; Reed. Dep. 147:14-18.)

Inland did not act "beyond all bounds of decency [so as] to be regarded as atrocious and utterly intolerable." Bain, 936 S.W.2d at 623.

Even if Reed's claim were meritorious, it would fail because it was filed after the statute of limitations had expired. The statute of limitations for intentional infliction of emotional distress is one year. Tenn. Code Ann. § 28-3-104; see also Leach v. Taylor, 124 S.W.3d 87, 91 (Tenn. 2004) ("[I]ntentional infliction of emotional distress is a personal injury tort, governed by the general one-year statute of limitations.") (citation omitted). Reed provides no examples of instances of intentional infliction of emotional distress after her last day in Inland's office on July 25, 2008. (Resp. ¶ 39.) Reed's complaint was not filed until August 19, 2009, more than one year after her last day of work. Inland's motion for summary judgment on Reed's claim of intentional infliction of emotional distress is GRANTED.

### E. HOSTILE WORK ENVIRONMENT

Reed alleges that Inland created a hostile work environment under the THRA. (Compl. ¶ 28.) Because the THRA is based on, and is "coextensive[] with", Title VII, federal courts rely in part on cases interpreting Title VII. Gordon v. W.E. Stephens Mfg. Co., Inc., No. M2007-01126-COA-R3-CV, 2008 WL 4254584, at *5 (Tenn. Ct. App. Sept. 16, 2008); see also Campbell, 919

31

S.W.2d at 31 ("our analysis of [hostile work environment claims] is the same under both the Tennessee Human Rights Act and Title VII of the Federal Civil Rights Act.").

To prove a hostile work environment claim, a plaintiff "needs to show: (1) she was a member of a protected class; (2) she was subjected to unwelcomed harassment; (3) the harassment was based on sex or race; (4) the harassment created a hostile work environment; and (5) employer liability." Ladd, 552 F.3d at 500 (citation omitted).

"[H]ostile-work-environment claims 'involve[] repeated conduct' and require the plaintiff to demonstrate that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Hunter, 565 F.3d at 994 (quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115-16 (2002)). "Both an objective and a subjective test must be met: the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive." Bowman v. Shawnee State Univ., 220 F.3d 456, 463 (6th Cir. 2000) (citation omitted); see also Thornton v. Fed. Express Corp., 530 F.3d 451, 455 (6th Cir. 2008). In determining whether the conduct is severe or pervasive enough to

32

create a hostile work environment, factors "'include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Bourini v. Bridgestone/Firestone N. Am. Tire, LLC, 136 F. App'x 747, 751 (6th Cir. 2005) (quoting Bowman, 220 F.3d at 463). "The Supreme Court has consistently held that 'simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.'" Id. (quoting Newman v. Fed. Express Corp., 266 F.3d 401, 405 (6th Cir. 2001)).

Reed is a member of two protected classes because she is African-American and female. See Gallagher v. C.H. Robinson Worldwide, Inc., 567 F.3d 263, 270 (6th Cir. 2009). However, she has failed to establish employer liability or that the incidents adduced rose to the level of a hostile work environment.

As evidence of a hostile work environment, Reed argues that she was "transferred to the special projects position due to what Inland Intermodal referred to as 'attendance issues.'" (Resp. 2.) These projects were difficult for Reed due to her pregnancy, and she testified that she was transferred to another position. Id. Reed also says that Kip Reed, her supervisor,

changed her schedule so she would not receive eight hours salary for working from 7:00 AM to 4:00 PM. (Reed. Dep. 178:25-179:25.)

Reed testifies that employees made "comments about rednecks," a fellow employee ("Brandon") "[came] over to show me how to do something or critique some of my work or whatever," and that Brandon listened to "predominantly black music, R and B, stuff like that" to mock her. (Reed Dep. 144:23-25,146:13-19.) There was also an instance when Brandon "started caressing his arm, kind of flexing it" while Reed was in the office with him. (Id. 146:21-25.) Reed did not report these incidents to anyone at Inland. (Id. at 147:1-2.)

Drawing all inferences in Reed's favor, the record does not support harassment rising to the level of a hostile work environment. Isolated instances are not pervasive enough to create a hostile work environment. Long v. Ford Motor Co., No. 05-4152, 2006 U.S. App. Lexis 21893, at *13 (6th Cir. Aug. 24, 2006). In Black v. Zaring Homes, the Sixth Circuit overturned a jury verdict based on a hostile work environment claim although the plaintiff's supervisor, over the course of year, made numerous comments and: 1) joked about calling a new development Hootersville, Titsville, or Twin Peaks; 2) looked the plaintiff up and down while eating a pastry and saying he preferred nothing more in the morning than "sticky buns"; 3) informed the plaintiff that she was paid "great money for a

woman"; and 4) joked about her dancing on tables at a bikers' club.  104 F.3d 822, 824 (6th Cir. 1997).  These incidents did not rise to the level of a hostile work environment because they were "merely offensive."  Id. at 826.

"[C]onduct that is deplorable, off-color, or offensive . . . is not always legally actionable." Kelly v. Senior Ctrs., Inc., 169 F. App'x 423, 429 (6th Cir. 2006).  Because the purported harassment here "was not a daily or even a weekly event," it did not create a hostile work environment.  Id.

Reed has also failed to show that Inland was aware of the harassment or condoned it.  To justify employer liability, "a plaintiff must demonstrate that the employer tolerated or condoned the alleged conduct or that the employer knew or should have known and failed to take prompt remedial action." Scott v. G&J Pepsi-Cola Bottlers, Inc., No. 09-5683, 2010 U.S. App. Lexis 16904, at *7 (6th Cir., Aug. 10, 2010).  Although there is no requirement that an employee report discrimination or harassment, there must be evidence that the employer knew or should have known that there was a hostile work environment. Randolph v. Ohio Dep't of Youth Servs., 453 F.3d 725, 735 (6th Cir. 2006).  A court must find an employer liable if the employee can show that the employer "knew or should have known of the conduct, and that its response manifested indifference or unreasonableness."  Jackson v. Quanex Corp, 191 F.3d 647, 662

(6th Cir. 1999).   The burden remains on the plaintiff to show that the employer knew of the hostile environment and failed to take prompt remedial action.   Id. at 659.

Given the facts Reed has provided, Inland could not have known about the incidents.   Brandon and Reed were the only people in the office when Brandon caressed his arm, and she reported it to no one.   (Reed Dep. at 147:1-2.)   The only other incident Reed cites is that Brandon listened to R and B to mock her.   (Id. at 146:2-25.)   Reed introduces no evidence that other African-Americans or women complained about Brandon's actions, or that Brandon played the music to mock anyone else.   See Neview v. D.O.C. Optics Corp., 382 F. App'x 451, 456 (6th Cir. 2010) (finding for the defendant because the plaintiff "failed to provide notice to her employer of the alleged offensive behavior").   There was no reason for Reed to have assumed that Inland would ignore her concerns.   Indeed, she concedes that Inland's Human Resources Department responded to her complaints about Kip Reed's making her job more difficult and told Kip Reed that Reed no longer reported to him.   (Reed Dep. at 147:14-18.) Reed does not allege that Inland tolerated a discriminatory work environment.   See Scott, 2010 U.S. App. Lexis 1694 at *8 (dismissing plaintiff's claim because he "presented no evidence that the [defendant] knew of and tolerated an ongoing hostile work environment"); Baugham v. Battered Women, Inc., No. 05-

36

6051, 2006 U.S. App. Lexis 31722, at *22 (6th Cir. Dec. 20, 2006) (finding defendant acted appropriately when it promptly responded to conduct that gave rise to a hostile work environment); Randolph, 453 F.3d at 735 (finding employers had notice of hostile work environment when the plaintiff and other co-workers had complained on several occasions).  No reasonable jury could find for Reed on her hostile work environment claim.

Reed's hostile work environment claim is also barred by the statute of limitations.  The THRA requires that an action be filed within one year of the end of the discriminatory actions. Tenn. Code Ann. § 4-21-311(d).  Reed's last day at Inland was July 25, 2008.  (Reed's Statement of Facts ¶ 39.)  Her claim was not filed until August 19, 2009.  See Spicer v. Beman Bottling Co., 937 S.W.2d 884 (Tenn. 1996) (dismissing THRA claim because the last incident of harassment occurred more than a year before the claim was filed).  Inland's motion for summary judgment on Reed's hostile work environment claim is GRANTED.

**V.  CONCLUSION**

For the foregoing reasons, Inland's Motion for Summary Judgment is GRANTED.

So ordered this 29th day of September, 2011.


s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE